UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:18-CV-81205-BB
BLOOM/REINHART

PALM BEACH POLO, INC.,

    Plaintiff,

v.

WIGGIN & DANA, LLP,

    Defendant.

## DEFENDANT'S MOTION TO DISMISS AND, ALTERNATIVELY, TO STAY AND INCORPORATED MEMORANDUM OF LAW

Defendant, WIGGIN & DANA, LLP, hereby moves under Rule 12(b)(6) to dismiss the Complaint [DE 1] for failure to state a claim upon which relief can be granted. Alternatively, Wiggin & Dana moves to stay this action pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), or under the discretionary principles of *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005).

## FACTUAL BACKGROUND COMMON TO BOTH MOTIONS

Plaintiff Palm Beach Polo, Inc. ("Polo") brings this action for declaratory relief and for an accounting arising from a transfer of funds from Polo to Wiggin & Dana's trust account. Robert Matthews ("Matthews") is a client of Wiggin & Dana. [DE 1, ¶8] At Matthews' request, Polo loaned him $150,000 (the "funds") to help pay for Wiggin & Dana's representation. [*Id.* ¶¶9, 10] On May 29, 2018, Polo transferred the funds to Wiggin & Dana's trust account. [*Id.* ¶¶10, 11] Beginning on or about July 13, 2018, Polo has demanded an accounting and return of the funds from Wiggin & Dana, but Wiggin & Dana has refused Polo's demands. [*Id.* ¶¶14-18]

On July 3, 2018, Polo assigned all of its interests and rights in the funds to an entity named West Coast Investors, LLC ("West Coast"). On July 5, 2018, West Coast, as assignee of Polo, sued Matthews and his wife in the Nineteenth Judicial Circuit in and for St. Lucie County, Florida, to recover the funds, and other relief (*West Coast Investors, LLC v. Robert V. Matthews et al.*, Case No: 562018CA001224AXXXHC (the "State Action")). A copy of the complaint in the State Action is attached as Exhibit 1.[1] Attached to the state court complaint is the Assignment Agreement, which unambiguously provides that "[Polo] does hereby assign to [West Coast] **all of Assignor's rights and interest** in certain loans made by Assignor to Maria S. Matthews and Robert V. Matthews" including a "May 28, 2018 Loan to Maria S. Matthews and Robert V. Matthews - $150,000.00 . . . ."  *See* Exhibit 1, Ex. 1 (emphasis added).

Over two months later, on September 11, 2018, Polo brought this action against Wiggin & Dana (the "Federal Action") seeking recovery of the same $150,000 loan proceeds held in trust by Wiggin & Dana.

## ARGUMENT

**I.      The Action Should be Dismissed Because Polo Lacks Standing**

The Complaint should be dismissed because Polo lacks standing.  A plaintiff seeking to invoke the jurisdiction of the court must establish requisite standing to sue. *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). To establish standing, the party must allege three elements:

---

[1] "Courts may take judicial notice of public records when considering whether to grant a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175-BB, 2017 WL 7411026, at n. 2 (S.D. Fla. Apr. 3, 2017); *Universal Exp., Inc. v.  U.S. Sec. & Exch. Comm.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006); *Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 Fed App'x 812, 816 n.5 (11th Cir. 2014). "This includes taking judicial notice of another court's records to establish the subject matter of litigation." *Koppelman*, at n.2; *Beepot v. J.P. Morgan Chase National Corporate Services, Inc.*, 57 F. Supp.3d 1358, 1366 (M.D. Fla. 2014).

(1) that he has suffered an "injury-in-fact"; (2) a causal connection between the asserted injury-in-fact and the challenged conduct of the defendant(s); and (3) that the injury likely will be redressed by a favorable decision. *See Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Koppelman*, 2017 WL 7411026, at 2-3. In *Koppelman*, this court dismissed a plaintiff's claims for lack of standing on a motion to dismiss where various public records revealed that the 3 condominium units plaintiff claimed to own were actually owned by others. 2017 WL 7411026, at 2-3.

To establish its standing, Polo claims that it has a present interest in the disputed funds held in Wiggin & Dana's trust account. Polo alleges there is a substantial controversy and adverse legal interests between Polo and Wiggin over the funds and seeks an immediate "return" of "the balance of Polo's Funds . . . ." [DE 1, ¶¶23, 25, 26, 28] Polo further alleges that Wiggin, as the "recipient of Polo's Funds" owes a "fiduciary obligation to Polo" and requests "a full and complete accounting of the Polo Funds." [DE 1, ¶¶30, 31]

Contrary to Polo's claimed present interest in the funds, Polo assigned all of its interests and rights in the funds to West Coast on July 3, 2018, ten days before it began seeking return of the funds from Wiggin & Dana. Then, on July 5, 2018, West Coast, as assignee, directly sued Matthews and his wife in state court to recover the funds, as well as other loaned money. Polo may disclaim knowledge of West Coast's actions, but the same person serves as president of West Coast and Polo as shown on the signatures to the Assignment Agreement. The complaint in the State Action and accompanying Assignment Agreement establish that West Coast, not Polo, has all rights and interest in the loan. Polo has no current interest in the funds and therefore lacks standing to bring the alleged claims, much like the plaintiff in *Koppelman*. *See Koppelman*, at 2-3.

3

Furthermore, Polo fails to meet the "injury-in-fact" requirement because the allegations are insufficient to establish that Polo is entitled to the return of the funds. To acquire standing, a plaintiff must establish "an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Here, Polo alleges only that it wired the funds to Wiggin & Dana on May 29, and that Polo has since demanded that the funds be returned. The Complaint offers no theory of law to support Polo's claim that it is entitled to the return of the funds. Polo seems to rely on Rule 1.15(e) of the Connecticut Rules of Professional Conduct which states only that "a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive." This rule does not and can not independently establish that Polo is entitled to receive the funds at issue, particularly where Polo and Wiggin & Dana share no attorney-client relationship. Because Polo does not allege any reason why it would be entitled to a return of the funds, it has not suffered an injury-in-fact and therefore lacks standing to bring this action.

**II.     In the Alternative, This Court Should Stay this Action Under the *Colorado River* Abstention Doctrine.**

    **A.     The State Action and Federal Action are Parallel Proceedings.**

In federal courts there should be sensitive consideration of ongoing proceedings in state courts, particularly where concurrent jurisdiction exists. *Merrill Lynch v. Haydu*, 675 F.2d 1169, 1173-74 (11th Cir. 1982). "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* This Court has previously explained that:

> A federal district court may dismiss or stay an action when there is an ongoing parallel action in state court, pursuant to the *Colorado River* doctrine of "exceptional circumstances." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004). While federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them, and the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," *Colorado River Water*

> *Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), there exist certain circumstances where abstention is appropriate. The principles underlying the *Colorado River* doctrine stem from "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equp., Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)).

*Brown v. Blue Cross and Blue Shield of Florida, Inc.*, No. 11-80390-CIV, 2011 WL 11532078, at *6 (S.D. Fla. Aug. 8, 2011).

As a threshold matter, the *Colorado River* analysis applies "when federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004); *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1344 n.13 (S.D. Fla. 1999) (holding that exact parallelism is not required; the two proceedings need only be substantially similar).

> There is no requirement, however, that the parties or issues be identical in order for a stay under the *Colorado River* doctrine to be permissible. This is simply too high of a hurdle, because "only litigants bereft of imagination would ever face the possibility of an unwanted abstention order, as virtually all cases could be framed to include additional issues or parties."

*Brown,* 2011 WL 11532078, at *9 (quoting *Ambrosia Coal*, 368 F.3d at 1330). "Abstention is appropriate even if the state court proceedings merely narrows the issues presented in the federal case because 'by abstaining, this Court would still be avoiding the kind of wasteful, duplicative adjudication the abstention doctrine was created to prevent.'" *Fred McGilvray, Inc. v. Bank of Am., N.A.*, Case No. 10-cv-20025-AJ, DE 19 at 3-4 (S.D. Fla. May 5, 2010) (quoting *Allied Mach. Serv., Inc. v. Caterpiller Inc.*, 841 F.Supp. 406, 408 (S.D. Fla. 1993).

Here, the *Colorado River* analysis is proper because the State Action and the Federal Action clearly involve "substantially similar" proceedings. Both disputes arise from the same set of facts, namely the May 29, 2018 loan made by Polo to Matthews. Both cases involve claims to

these same disputed funds, such that the disposition of the Federal Action would likely duplicate the efforts of the court in the State Action and lead to potentially inconsistent conclusions.

The State Action and Federal Action also involve substantially the same parties. Although the State Action does not include Polo as a named party, West Coast is the assignee of Polo's interests in the funds. Also, as noted above, the two entities share the same president, thus this appears to have been a transfer of an asset between related entities. Wiggin & Dana is not named in the State Action, but it is undisputed that Wiggin & Dana is merely holding the funds in trust for Matthews, who is named in the State Action. At the core of both cases are the competing claims by Matthews, Polo, and West Coast to the funds held in trust by Wiggin & Dana.

In any case, complete identity of parties is not necessary for abstention to apply. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006) ("We have never required complete identity of parties for abstention."); *see also Sides v. Simmons*, No. 07-80347-CIV, 2007 WL 3344405, at *3 (S.D. Fla. 2007) (granting stay despite new claims and new defendants). The substitution of Polo for West Coast and the omission of Matthews as a party in the Federal Action may appear to be a basis to distinguish the two lawsuits, but the reality is that the two lawsuits seek the same relief regarding the funds (although the State Action also addresses additional claims). Thus, the State Action and Federal Action are parallel for abstention purposes.

### B. Exceptional Circumstances Justify Abstention in this Federal Action.

Once the threshold matter of substantial parallelism between the state and federal cases is established, courts must consider whether there are "exceptional circumstances" that justify a federal court's decision to abstain from exercising its jurisdiction and yield to the jurisdiction of the state court. *Ambrosia Coal*, 368 F.3d at 1328. The Eleventh Circuit has recognized six factors that courts must consider in assessing whether abstention is proper:

>(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Ambrosia Coal*, 368 F.3d at 1331. Additionally, the Supreme Court has explained that a district court should evaluate: (1) "the vexatious or reactive nature of either the federal or state litigation" in determining whether to defer to a parallel state litigation, and (2) whether the concurrent cases involve a federal statute that evinces a policy favoring abstention. *Id*. (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20 (1983)).

In weighing the above considerations, the Supreme Court explained that "[n]o one factor is necessarily determinative," and "[t]he weight to be given any one factor may vary greatly from case to case." *Id.* (internal citations omitted). Further, "the factors must be considered flexibly and pragmatically, not as a 'mechanical checklist.'" *Id.* (quoting *Moses H.*, 460 U.S. at 16). A single factor, however, "can be the sole motivating reason for the abstention." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (explaining that *Moses H. Cone* noted the desire to avoid piecemeal adjudication was the driving force behind the *Colorado River* abstention and dismissal).

### 1. Jurisdiction over Property at Issue.

Both the State Action and Federal Action are *in personam* proceedings, and as such, neither court has assumed jurisdiction over any property at issue. Thus, the first factor is neutral.

### 2. Inconvenience of Federal Forum.

This factor focuses "primarily on the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal*, 368 F.3d at 1332. Here, the State Action has been brought in St. Lucie County, Florida. The Federal Action has been brought in the Southern District

of Florida, which has territorial jurisdiction over St. Lucie County. Accordingly, this factor is also neutral.

### 3. Avoidance of Piecemeal Litigation.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988); *see also Brown*, 2011 WL 11532078, at *9 (stating that abstention under the *Colorado River* doctrine is meant to avoid piecemeal litigation where "there exists a strong likelihood that it will duplicate the efforts of the state court and possibly reach different factual-and consequently legal-conclusions on the same exact set of facts.") (internal citation omitted); *First Premium Servs., Inc. v. Best Western Int'l*, No. 95-1466-CIV-UUB, 1996 WL 445349, at *4-5 (S.D. Fla. Feb. 12, 1996) (action stayed to avoid piecemeal litigation). The danger of piecemeal litigation is great when federal litigation will mirror the proceedings of pending state claims. *See Sides*, 2007 WL 3344405, at *3. Principles of comity also suggest that the court having jurisdiction over all matters in dispute should have jurisdiction over the case. *See Merrill Lynch*, 675 F.2d at 1173.

Here, piecemeal litigation is unavoidable. The premise of this action is that Polo is the proper party to enforce the rights to an alleged $150,000 loan to Matthews, whereas the premise of the State Action is that West Coast is the holder of such rights pursuant to a written assignment. Both cannot be true simultaneously, and there is no reason Polo should be actively litigating to pursue claims it demonstrably assigned to West Coast, particularly given that the Matthews' underlying liability to West Coast, if any, has yet to be determined in the first-filed action. Proceeding with the Federal Action will duplicate the court's and parties' efforts: there will be parallel discovery, multiple trials, and possibly conflicting decisions based on substantially

similar evidence. This will result in a waste of judicial resources, and it raises a significant risk that the two courts come to different and contradictory conclusions. By abstaining, this Court would be avoiding the kind of wasteful, duplicative, and potentially contradictory adjudication that the abstention doctrine was created to prevent. Accordingly, the potential for piecemeal litigation strongly favors abstention.

### 4. Order and Progression of State and Federal Cases.

The fourth factor, the order in which the state and federal courts obtained jurisdiction and the progression of each case, also weighs in favor of abstention under the instant facts. This fourth factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Ambrosia Coal*, 368 F.3d at 1333 (quoting *Moses H. Cone*, 460 U.S. at 21); *see also Lisa, S.A. v. Mayorga*, 232 F.Supp.2d 1325, 1328 (S.D. Fla. 2002) (holding that abstention is appropriate where state court obtained jurisdiction first and more litigation occurred in state court); *Bosdorf*, 79 F. Supp. 2d at 1345 (holding that abstention is appropriate where state court action was filed almost one year earlier, discovery had occurred in state court action, and no orders or discovery had occurred in federal action). West Coast initiated the State Action on July 5, 2018. The court has already denied motions to dismiss and to transfer venue, so the case will be proceeding to trial in state court. Polo initiated the Federal Action on September 11, 2018. Other than this motion, no other motions or responsive pleadings have been filed in the Federal Action. The State Action was filed first and is farther along than the Federal Action.

Additionally, courts analyzing this factor should consider "the avoidance of forum shopping and the problem of collateral estoppel." *See Rambaran v. Park Square Enters., Inc.*, No. 6:08-cv-247-Orl-19JK, 2008 WL 4371356, at *6 (M.D. Fla. Sept. 22, 2008)."

> [T]o permit both state and federal suits to go forward would lead to forum shopping by encouraging Plaintiff to simply choose a second court if he becomes unhappy with the first. Deferring jurisdiction to the court where the case was first filed protects the neutrality of the federal system and is consistent with long-standing judicial notions of issue and claim preclusion.

*Brown*, 2011 WL 11532078 at *6 (quoting *Sides*, 2007 WL 3344405, at *4); *see also Fred McGilvray, Inc. v. Bank of America, N.A.*, Case No. 10-cv-20025-AJ, DE 19, at *4 (S.D. Fla. May 5, 2010) ("[A]bstaining in this case avoids piecemeal litigation, duplicative adjudication, and prevents the plaintiffs from forum shopping to increase their chances at victory"). Polo seeks recovery of the funds in the Federal Action, while its assignee, West Coast, seeks recovery of the funds in the State Action. The risk of forum shopping is obvious, thus, this factor favors abstention.

### 5. Application of State or Federal Law.

The fifth factor considers whether state or federal law applies. The "question for [abstention] purposes is not which state law applies, but rather whether federal or state law applies." *Ambrosia Coal*, 368 F.3d at 1334 (quoting *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir. 1990). Although Polo has sought relief under the Federal Declaratory Judgment Act, the claim is equally available in the State Action under state law. There are no other federal claims, thus this factor favors abstention.

### 6. Adequacy of the State Court to Protect the Federal Plaintiffs' Rights.

The sixth factor also favors abstention. Where "[t]he state court is fully adequate to protect [a party's] rights … [t]his sixth factor weighs in favor of abstention." *Redner v. City of Tampa*, 723 F. Supp. 1448, 1454 (M.D. Fla. 1989). The state court here is well positioned to protect the parties' rights to the disputed funds as the State Action is already deciding whether or not the Matthews have to repay the loan to West Coast as Polo's assignee, which will bear upon who is entitled to the same funds in the Federal Action. Accordingly, this factor favors abstention.

### 7. Policy Considerations Also Favor Abstention.

In addition, the two policy reasons identified by the Supreme Court as relevant to this analysis favor abstention. The Eleventh Circuit has stated that "the vexatious or reactive nature of either the federal or the state litigation" is an important consideration in deciding whether to defer to a parallel proceeding. *Ambrosia Coal*, 368 F.3d at 1331. The "reactive" character of a federal suit weighs in favor of abstaining. *See Allen v. La. State Bd. of Dentistry*, 835 F.2d 100 (5th Cir. 1988) (affirming district court's stay where sequence of events indicates federal suit was vexatious or reactive); *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (affirming district court's abstention because federal suit was attempt to avoid adverse ruling in state court). Here, Polo's decision to file the Federal Action appears to be an attempt to circumvent a proper determination of its (or West Coast's) rights under the loan agreement and immediately lay claim to the contested funds. Polo's Complaint neglects to mention either the existence of the already-pending State Action or the assignment of its interest in the $150,000 loan to West Coast. Rather than await the outcome of the State Action, Polo has instead chosen to bring an action in this Court and, in doing so, has put Wiggin & Dana in the middle of a dispute which should properly be settled among the parties to the State Action. This sort of vexatious conduct by Polo, designed to manipulate the courts, threatens the integrity of the judicial process and weighs in favor of abstention.

The second policy factor, whether the concurrent cases involve a federal statute that evinces a policy favoring abstention, again favors abstention. Neither the State Action nor the Federal Action involves a Federal statute that evinces a policy favoring abstention.

Applying the *Colorado River* analysis, the totality of the circumstances weighs in favor of abstaining on the basis of "wise judicial administration" and establishes the exceptional

11

circumstances necessary to stay these proceedings in deference to the State Action. Accordingly, the Federal Action should be stayed under the *Colorado River* abstention doctrine.

### III. **This Declaratory Relief Action Should be Stayed Pursuant to *Ameritas Variable Life Ins. Co. v. Roach*.**

The Declaratory Judgment Act "gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). Further, the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. Accordingly, "district courts have substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings." *Artmark Prods. Corp. v. Conbraco Ind.*, 2012 WL 1155132 at *1 (S.D. Fla. Apr. 5, 2012) (citing *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, 298 Fed. Appx. 813, 814 (11th Cir. 2008)).

The Eleventh Circuit has provided a number of factors for district courts to consider in balancing state and federal interests when deciding whether to exercise jurisdiction over a declaratory judgment action. *Ameritas*, 411 F. 3d at 1331. These factors are:

> (1) Whether the state's interest in having the issues raised in the case decided in its own courts outweighs the need for a federal declaratory action, (2) Whether the judgment in the federal declaratory action would settle the controversy pending in the state court, (3) Whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue in a manner not available in state court, (4) Whether the declaratory remedy is being used merely to gain a perceived procedural advantage, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable, (5) Whether the use of a declaratory action would increase the friction between the federal and state courts

> and improperly encroach on state jurisdiction, (6) Whether there is an alternative remedy in federal court that is better or more effective, (7) Whether the underlying factual issues in the state court proceeding are important to an informed resolution of the federal case, (8) Whether the state trial court is in a better position to evaluate those factual issues than is the federal court, and (9) Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F. 3d at 1331. This list of factors is neither absolute nor exhaustive, and no one factor is controlling. *Great Lakes*, 298 Fed. Appx. at 815. The Court has no obligation to consider each and every factor on the list and is free to consider any other factors it deems relevant or significant. *See id.*

Here, Polo has brought a claim for relief pursuant to the Federal Declaratory Judgment Act, giving this Court substantial latitude in deciding whether to stay or dismiss this action in light of the pending State Action. The fact that Polo also seeks an accounting does not affect the analysis here. *See West Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Trust,* 2010 WL 11506019, at *5 (S.D. Fla. May 14, 2010) (holding that the action was "at its heart" a declaratory judgment action and applying *Ameritas* analysis where "Plaintiff's nondeclaratory claims hinge on the outcome of the declaratory claims"). Here, Polo's entitlement to an accounting entirely hinges on the Court's determination of its rights under the declaratory action. Accordingly, the *Ameritas* standard applies.

As noted in the *Colorado River* analysis above, the interests of judicial economy favor resolution of the dispute in the underlying State Action. Without abstention, the State Action will continue to be litigated and discovery will likely cover the same substantive issues raised in this declaratory action. This will result in the kind of substantial and needless duplication of litigation that the principles of *Ameritas* are designed to prevent. *See Ameritas*, 411 F.3d at 1332 (affirming district court's decision to abstain from federal action where allowing the declaratory action to

proceed "would amount to the unnecessary and inappropriate 'gratuitous interference' with the more encompassing and currently pending state court action"). It may also give rise to complicated and unnecessary *res judicata* issues. *See Amerisure Mut. Ins. Co. v. Plantation Key Office Park, LLLP*, 2011 WL 2436693, at *5 (S.D. Fla. June 14, 2011) (holding that dismissal was warranted where an action depended on factual issues pending before the state court and resolving the action "could possibly result in complex *res judicata* issues").

Furthermore, the state court has a strong interest in deciding the issues raised in this action because Florida law governs those issues. *See Lincoln Benefit Life Co. v. Look*, 2006 WL 3734331, at *4 (S.D. Fla. Dec. 15, 2006) (applying first *Ameritas* factor and noting "Florida law governs the substantive issues in this case. Thus the Court must conclude that Florida has a substantial stake in deciding the state law issues involved."). At the core of both actions is an ordinary loan agreement between Polo and Matthews, and no federal legal questions have been raised. Therefore, this weighs in favor of abstention or dismissal. *See Amerisure*, 2011 WL 2436693 at *7 ("There are no federal legal questions at issue in the Federal Declaratory Action or the State Court Action. Therefore, this factor weighs in favor of dismissal.").

Accordingly, because this dispute is better suited for the state court where the pivotal issues are already being decided, this Court should exercise its considerable discretion under the Declaratory Judgment Act and decline jurisdiction in this case. Allowing the State Action to run its course will promote judicial economy, avoid infringing on the state court's interests, and lead to the most efficient resolution of the issues.

## CONCLUSION

WHEREFORE, Defendant requests that this Court dismiss this action with prejudice for lack of standing or alternatively stay this action until the pending State Action is completed

pursuant to *Colorado River* or *Ameritas*, and award Defendants further relief as the Court deems just and proper under the circumstances.

### Certificate of Service

I hereby certify that on this 22nd day of October, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List.

>JONES, FOSTER, JOHNSTON & STUBBS, P.A.
>Attorneys for Defendants
>505 South Flagler Drive
>Suite 1100
>West Palm Beach, FL  33401
>561-659-3000
>Fax: 561-650-5300
>
>By: /s/ Roberto M. Vargas
>       Roberto M. Vargas, Esquire
>       Florida Bar No. 151106
>       rvargas@jonesfoster.com

\\JFJSPL2\Apps\Docs\30170\00001\PLD\1W38384.DOCX